## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

MARY G. DOEBLER,

    *Plaintiff*,

*v.*                          CASE NO. 12-CV-11795

COMMISSIONER OF          DISTRICT JUDGE LAWRENCE P. ZATKOFF
SOCIAL SECURITY,         MAGISTRATE JUDGE CHARLES E. BINDER

    *Defendant.*

_____/

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

## I.    RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, that Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

## II.    REPORT

### A.    Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the

---

[1]The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at:  http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

Commissioner's decision denying Plaintiff's claims a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") benefits. This matter is currently before the Court on cross-motions for summary judgment. (Docs. 18, 22.)

Plaintiff Mary G. Doebler was 53 years of age at the time of the most recent administrative hearing. (Transcript, Doc. 11 at 40.) Plaintiff's employment history includes work as temporary office clerk for seven years. (Tr. at 172.) Plaintiff filed the instant claims on March 26, 2009, alleging that she became unable to work on January 1, 2008. (Tr. at 131, 138.) The claims were denied at the initial administrative stage. (Tr. at 52-53.) In denying Plaintiff's claims, the Commissioner considered affective disorders, obesity and other hyperalimentation as possible bases for disability. (*Id.*) On February 16, 2011, Plaintiff appeared before Administrative Law Judge ("ALJ") B. Lloyd Blair, who considered the application for benefits *de novo*. (Tr. at 7-22, 35-51.) In a decision dated March 2, 2011, the ALJ found that Plaintiff was not disabled. (Tr. at 18.) Plaintiff requested a review of this decision on March 15, 2011. (Tr. at 130.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), when, on March 6, 2012, after review of additional exhibits[2] (Tr. at 129-30), the Appeals Council denied Plaintiff's request for review. (Tr. at 1-6.) On April 23, 2012, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision.

---

[2]In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996); *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

### B.    Standard of Review

In enacting the social security system, Congress created a two-tiered structure in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during the administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

"It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the

3

ALJ is charged with observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability"). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247 (quoting SSR 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, a court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). *See also Mullen*, 800 F.2d at 545. The scope of a court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241. *See also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir.

1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party"); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 F. App'x 521, 526 (6th Cir. 2006).

### C.    Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). *Accord Bartyzel v. Comm'r of Soc. Sec.*, 74 F. App'x 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits ("DIB") program of Title II, 42 U.S.C. § 401 *et seq.*, and the Supplemental Security Income ("SSI") program of Title XVI, 42 U.S.C. § 1381 *et seq.* Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work[.]" *Jones*, 336 F.3d at 474 (cited with approval in *Cruse,* 502 F.3d at 540). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given her RFC [residual functional capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

D.    **ALJ Findings**

6

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff met the insured status requirements through December 31, 2008, and had not engaged in substantial gainful activity since January 1, 2008, the alleged onset date. (Tr. at 12.) At step two, the ALJ found that Plaintiff's high blood pressure, morbid obesity, and depression were "severe" within the meaning of the second sequential step. (*Id*.) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Tr. at 13-14.) At step four, the ALJ found that Plaintiff could not perform any past relevant work. (Tr. at 17.) The ALJ also found that Plaintiff was 50 years old on the alleged disability onset date and thus met the classification of an individual closely approaching advanced age. (*Id.*) At step five, the ALJ found that Plaintiff could perform a limited range of light work. (Tr. at 14-17.) Therefore, the ALJ found that Plaintiff was not disabled. (Tr. at 18.)

### E.    Administrative Record

A review of the relevant medical evidence contained in the administrative record indicates that Plaintiff was treated by Leon Rubenfaer, M.D., from 2006 to 2009. (Tr. at 217-35.) On January 9, 2009, Dr. Rubenfaer noted with regard to Plaintiff that "[t]hings are a little better, finances need to be in order, still looking for work, son in prison, will get out in April, [illegible], home is o.k., a little stressful." (Tr. at 218.) On March 6, 2009, Dr. Rubenfaer noted that Plaintiff's "finances are still a problem, was looking for work, son is still in prison, parole hearing in April, visited son in January, daughter is doing o.k., sleep is about the same, still fatigued." (Tr. at 217.)

Plaintiff was also treated for recurring sinusitis by Gregory Clague, D.O., from 2007 to 2010. (Tr. at 236-60, 290-308.)

On June 30, 2009, Plaintiff underwent a consultative examination with Fouad Batah, M.D. (Tr. at 261-67.) Dr. Batah noted that Plaintiff was "able to get on and off of the table without

7

difficulties. She was able to squat, bend and walk on her toes and heels without any difficulty." (Tr. at 262.) Dr. Batah also noted that Plaintiff was "oriented x 3[,]" "has normal muscle strength in upper and lower extremities[,]" was "alert, and obese, and in no acute distress." (Tr. at 262.) Dr. Batah diagnosed "Mild Depressed Mood" and noted that Plaintiff's "hypertension and hyperlipidemia seemed to be stable." (Tr. at 263.)

On October 29, 2009, an EMG and nerve conduction study was normal. (Tr. at 303.) On December 4, 2009, an MRI of Plaintiff's cervical spine showed "moderate to marked spinal stenosis and right neuroforamen narrowing at C5-6" and "[m]ild spinal stenosis and left neuroforamen narrowing at C6-7." (Tr. at 304.) On December 30, 2009, Plaintiff underwent steroid injections for C7-T1 right-sided cervical radiculopathy with Dr. Anand Thakur. (Tr. at 271-73, 282.)

Plaintiff was treated at Providence Behavioral Health on August 19, 2010. (Tr. at 309-13.)

A Medical Source State-Mental, dated September 20, 2010, was completed by Dr. Rubenfaer. (Tr. at 314-26.) Dr. Rubenfaer checked spaces on the form indicating that Plaintiff was markedly limited in activities of daily living, maintaining social functioning, and in concentration, persistence and/or pace, and that she had suffered "one or two" episodes of decompensation, each of extended duration (up to 2 weeks). (Tr. at 315.) Dr. Rubenfaer also checked the space for moderate limitations with respect to ability to remember work-like procedures, respond appropriately to changes in the work load, schedule or routine, and indicated "extreme" limitation in her ability to make simple work-related decisions. (*Id.*) Dr. Rubenfaer acknowledged that Plaintiff has never been hospitalized and indicated that the treatment plan was for Plaintiff to "see her therapist regularly [and] continue medication." (Tr. at 316.) Dr. Rubenfaer also indicated that

Plaintiff's orientation (time, person, place), memory (recent and past), and judgment were all "intact." (Tr. at 317.)

Plaintiff was treated by Dr. Crafton, M.D., in 2010. (Tr. at 334-48.) She was treated at Southfield Mental Health from 2010 to 2011. (Tr. at 327-33.) Plaintiff was also treated at POH Regional Hospital in October and November of 2010 for urinary issues. (Tr. at 349-78.)

At the administrative hearing, Plaintiff testified that she is able to cook "[a] litle bit," do laundry "maybe once or twice a week," shop for groceries with her husband, visit her parents, take care of her own personal hygiene, watch television, climb stairs "[w]ith difficulty," pick up ten pounds, stand for fifteen to twenty minutes at a time, "sit for a long time – maybe about an hour," and walk one block without having to rest. (Tr. at 45-47.)

At the administrative hearing, the ALJ asked the vocational expert ("VE") to consider a person with Plaintiff's background who

> can meet the demands of light work. She could never use ladders, scaffolds, or ropes; she'd only occasionally use ramps, stairs, stoop, kneel, crouch, or crawl. The individual should have only simple, unskilled work, and an SVP of 1 or 2; work involving one-, two-, or three-step instructions; no jobs involving concentration and detail or precision tasks, multi-tasking, computing, calculating, problem solving, or reasoning.

(Tr. at 48.) The ALJ then modified the hypothetical to include semi-skilled work. (*Id.*) The VE responded that such a person could not perform Plaintiff's past work but could perform the 8,600 assembly jobs, 3,800 packaging jobs, and 4,000 visual inspection jobs available in Southeast Michigan. (Tr. at 49.) When asked by the ALJ, the VE confirmed that his testimony was consistent with the Dictionary of Occupational Titles. (*Id.*)

### F.    Analysis and Conclusions

### 1.    Legal Standards

The ALJ determined that during the time Plaintiff qualified for benefits, she possessed the residual functional capacity to perform a limited range of light work. (Tr. at 14-17.)

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

After review of the record, I suggest that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether substantial evidence supports the ALJ's decision.

### 2.   Substantial Evidence

Plaintiff contends that the ALJ's decision is not supported by substantial evidence. (Doc. 18.) As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Specifically, Plaintiff contends that the ALJ "erred by omitting the claimant's diagnoses of asthma, pleurisy, upper respiratory infections, sinusitis and hypothyroidism" from the Step Two list of severe impairments and that the ALJ erred at Step Three in finding that Plaintiff did not meet a Listing because he did not properly consider the effects of Plaintiff's obesity. (Doc. 18 at 14-17.) Plaintiff also argues that the ALJ erred in assessing Plaintiff's credibility (*id*. at 17-20), erred in

10

determining Plaintiff's residual functional capacity thus resulting in an inaccurate hypothetical (*id.* at 20-21, 24-25), and improperly discounted the opinion of the treating psychiatrist, Dr. Rubenfaer. (*Id.* at 22-23.)

###    a.      Steps Two and Three

As stated above, Plaintiff contends that the ALJ erred by omitting certain diagnoses from the Step Two list of severe impairments and erred at Step Three by not properly considering the effects of Plaintiff's obesity. (Doc. 18 at 14-17.) However, once step two is "cleared" by a finding that some severe impairment exists, the ALJ must consider a plaintiff's "severe and nonsevere impairments in the remaining steps of the sequential analysis." *Anthony*, 266 F. App'x at 457. "The fact that some of [the plaintiff's] impairments were not deemed to be severe at step two is therefore legally irrelevant." *Id.* Consequently, I suggest that any alleged omission from the list of severe impairments does not undermine the ALJ's decision. As to the RFC analysis, the ALJ expressly stated that he considered all of the claimant's impairments, including impairments that are not severe. (Tr. at 14.) I therefore suggest that the ALJ committed no error. *See Kornecky,* 167 F. App'x at 508 ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party").

As to whether Plaintiff met one of the Listings, Plaintiff contends that although the ALJ found Plaintiff's obesity to be severe, he did not adequately address the effects of her obesity. (Doc. 18 at 15.) Plaintiff notes that she weighed 254 pounds on January 26, 2007, and is five feet and two inches tall. (Doc. 18 at 15; Tr. at 40, 258.) In support of her argument, Plaintiff cites Social Security Ruling ("SSR") 02-1p, but Defendant argues that SSR 02-1p does not require any specific mode of analysis for considering obesity. (Doc. 22 at 14.)

Defendant is correct that SSR 02-1p "does not mandate a particular mode of analysis, but merely directs an ALJ to consider the claimant's obesity, in combination with other impairments, at all stages of the sequential evaluation." *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 577 (6th Cir. 2009) (citation omitted). In this case, the ALJ expressly considered Plaintiff's obesity a severe impairment (Tr. at 12), and I therefore suggest that SSR 02-1p was satisfied.

### b.     Credibility Determination

When a disability determination that would be fully favorable to a claimant cannot be made solely on the basis of the objective medical evidence, an ALJ must analyze the credibility of the claimant, considering the claimant's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in Social Security Ruling 96-7p. Credibility determinations regarding a claimant's subjective complaints rest with the ALJ. *See Siterlet v. Sec'y of Health and Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). Generally, an ALJ's credibility assessment can be disturbed only for a "compelling reason." *Sims v. Comm'r of Soc. Sec.*, No. 09-5773, 2011 WL 180789 at *4 (6th Cir. Jan. 19, 2011) (citing *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001)); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). When weighing credibility, an ALJ may give less weight to the testimony of interested witnesses. *Cummins v. Schweiker*, 670 F.2d 81, 84 (7th Cir. 1982) ("a trier of fact is not required to ignore incentives in resolving issues of credibility"); *Krupa v. Comm'r of Soc. Sec.*, No. 98-3070, 1999 WL 98645, at *3 (6th Cir. Feb. 11, 1999) (unpublished). However, "[i]f an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." *Felisky*, 35 F.3d at 1036.

The social security regulations establish a two-step process for evaluating subjective symptoms, including pain. 20 C.F.R. § 404.1529; SSR 96-7p. In order for pain or other subjective complaints to be considered disabling, there must be (1) objective medical evidence of an

underlying medical condition, and (2) objective medical evidence that confirms the severity of the alleged disabling pain arising from that condition, or objectively, the medical condition is of such severity that it can reasonably be expected to produce such disabling pain. *See id.*; *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994); *Felisky*, 35 F.3d at 1038-39; *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986).

Therefore, the ALJ must first consider whether an underlying medically determinable physical or mental impairment exists that could reasonably be expected to produce the individual's pain or other symptoms. Secondly, after an underlying physical or mental impairment is found to exist that could reasonably be expected to produce the claimant's pain or symptoms, the ALJ then determines the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which the symptoms limit the claimant's ability to do basic work activities. *Id.* Although a claimant's description of his physical or mental impairments alone is "not enough to establish the existence of a physical or mental impairment," C.F.R. §§ 404.1528(a), 416.929(a), "[a]n individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded *solely* because they are not substantiated by objective medical evidence." SSR 96-7p, at *1 (emphasis added). Instead, the ALJ must consider the following factors:

    (i)       [D]aily activities;

    (ii)      The location, duration, frequency, and intensity of . . . pain;

    (iii)    Precipitating and aggravating factors;

    (iv)    The type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate . . . pain or other symptoms;

    (v)     Treatment, other than medication, . . . received for relief of . . . pain;

    (vi)    Any measures . . . used to relieve . . . pain.

13

*Felisky*, 35 F.3d at 1039-40; SSR 96-7p, at *3. Furthermore, the consistency of the evidence, including a claimant's subjective statements, is relevant in determining a claimant's credibility. 20 C.F.R. § 404.1527(c); SSR 96-7p, at *5.

In the instant case, the ALJ thoroughly considered each of the above factors. (Tr. at 14-15.) I suggest that the ALJ's findings are supported by substantial evidence. As to physical limitations, Dr. Batah noted that Plaintiff was "able to get on and off of the table without difficulties" and was able to "squat, bend and walk on her toes and heels without any difficulty." (Tr. at 262.) Dr. Batah also noted that Plaintiff "has normal muscle strength in upper and lower extremities" and was "alert, and obese, and in no acute distress." (*Id*.) Dr. Batah indicated that Plaintiff's "hypertension and hyperlipidemia seemed to be stable." (Tr. at 263.) On October 29, 2009, an EMG and nerve conduction study was normal. (Tr. at 303.) Plaintiff's cervical spine issues were mild to marked, were treated mostly with prescription medication for pain, and eventually a steroid injection was utilized. (Tr. at 271-73, 282, 304.)

As to mental limitations, Dr. Batah noted that Plaintiff was "oriented x 3" and he diagnosed only "Mild Depressed Mood." (Tr. at 263.) Dr. Rubenfaer's notes indicated that Plaintiff was "still looking for work" and that her troubles were financial and those experienced by most parents who worry about their children. (Tr. at 217-18.) Dr. Rubenfaer acknowledged that Plaintiff has never been hospitalized and indicated that the treatment plan was for Plaintiff to "see her therapist regularly [and] continue medication." (Tr. at 316.) Dr. Rubenfaer also indicated that Plaintiff's orientation to time, person, and place, her recent and past memory, and her judgment were all "intact." (Tr. at 317.) Finally, Plaintiff's activities of daily living and her ability to care for her own needs supports the ALJ's credibility findings. (Tr. at 45-47.) I therefore suggest that substantial evidence supports the ALJ's credibility findings.

14

### c.   Dr. Rubenfaer

Plaintiff argues that the ALJ improperly discounted the opinion of Plaintiff's treating psychiatrist, Dr. Rubenfaer. (Doc. 18 at 22-23.)

### i.   Standards

"Medical opinions are statements from physicians and psychologists or other 'acceptable medical sources' that reflect judgments about the nature and severity of an individual's impairment(s), including symptoms, diagnosis and prognosis, what the individual can still do despite the impairment(s), and physical and mental restrictions." SSR 06-3p, 2006 WL 2329939, at *2 (2006).

The opinion of a treating physician should be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the] case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. § 404.1527(d)(2). "The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion." 20 C.F.R. § 404.1527(c)(3). "Moreover, when the physician is a specialist with respect to the medical condition at issue, . . . her opinion is given more weight than that of a non-specialist." *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011).

Since the Commissioner is responsible for determining whether a claimant meets the statutory definition of disability, the ALJ "will not give any special significance to the source of an opinion[, including treating sources], on issues reserved to the Commissioner described in paragraphs (d)(1) and (d)(2) of this section[,]" i.e., whether a person is disabled or unable to work,

15

whether an impairment meets or equals a Listing, residual functional capacity, and application of vocational factors. 20 C.F.R. § 404.1527(d)(3). A "[d]octor's notation in his notes of a claimed symptom or subjective complaint from the patient is not medical evidence; it is the 'opposite of objective medical evidence.' [Thus,] [a]n ALJ is not required to accept the statement as true or to accept as true a physician's opinion based on those assertions." *Masters v. Astrue*, 818 F. Supp. 2d 1054, 1067 (N.D. Ill. 2011). "Otherwise, the hearing would be a useless exercise." *Id.*

"[O]nce well-supported contradicting evidence is introduced, the treating physician's evidence is no longer entitled to controlling weight . . . [but] 'is just one more piece of evidence for the administrative law judge to weigh . . . .'" *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008) (quoting *Hofslien v. Barnhart*, 439 F.3d 375, 377 (7th Cir. 2006)). Once the treating source is placed on the same level as other medical opinions, the treating source opinion should not be subjected to "greater scrutiny" than the non-treating sources, especially when there are more flagrant inconsistencies in the opinions of the non-treating sources. *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 379-80 (6th Cir. 2013).

If the ALJ declines to give controlling weight to a treating source's opinion, then he must use the following factors to determine what weight the treating source opinion should be given: "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source." *Wilson*, 378 F.3d at 544. These factors may be applied to all medical opinions, not just treating sources. SSR 06-3p, 2006 WL 2329939, at *3 (2006). However, because of the special status of treating source opinions, where the ALJ "failed to conduct the balancing of factors to determine what weight should be accorded these treating source opinions . . . , [t]his alone constitutes error." *Cole v. Comm'r of Soc. Sec.,* 652 F.3d

653, 660 (6th Cir. 2011) (quoting *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 408 (6th Cir. 2009)). But this error is not always dispositive and can be considered "harmless error" if: "(1) a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it; (2) the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion; or (3) where the Commissioner has met the goal of § 1527(d)(2) . . . even though she has not complied with the terms of the regulation." *Cole*, 661 F.3d at 940 (quoting *Wilson*, 378 F.3d at 547).

A physician qualifies as a treating source if the claimant sees the physician "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition." 20 C.F.R. § 404.1502. "Acceptable medical sources" who can be considered treating sources include "licensed or certified psychologists." SSR 06-03p, 2006 WL 2329939, at *1-2 (2006). After treating sources, a "nontreating source, who physically examines the patient 'but does not have, or did not have an ongoing treatment relationship with' the patient, falls next along the continuum." *Norris v. Comm'r of Soc. Sec.*, 461 F. App'x 433, 439 (6th Cir. 2012) (quoting *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007)). "'The opinion of a non-examining physician, on the other hand, 'is entitled to little weight if it is contrary to the opinion of the claimant's treating physician.'" *Adams v. Massanari*, 55 F. App'x 279, 284 (6th Cir. 2003) (quoting *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987)).

"Claimants are entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). Therefore, a decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent

17

reviewers the weight the adjudicator gave to the treating source's opinion and the reasons for that weight." SSR 96-2p, 1996 WL 374188, at *5 (1996). *See also Rogers*, 486 F.3d at 242. "This requirement is not simply a formality; it is to safeguard the claimant's procedural rights." *Cole*, 2011 WL 2745792, at *4. "[A] failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight accorded the opinions denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Rogers*, 486 F.3d at 243.

### ii.   Analysis

The ALJ first noted that Dr. Rubenfaer's ultimate conclusion that Plaintiff is disabled was not entitled to any weight because it is a question left to the determination of the Commissioner. (Tr. at 16.) The ALJ's statement of the law is correct on this point. *See* 20 C.F.R. § 404.1527(d)(3). The ALJ then explained his decision to give Dr. Rubenfaer's RFC findings "only some weight":

> his report appears to contain inconsistencies, and those opinions are accordingly rendered less persuasive. For example, in describing her mental trend/thought content, Dr. Rubenfaer noted that she denied delusions or hallucinations. In addition, her sensorium and mental capacity were noted to be "vital," her overall condition was found to be "stable," and it was noted that she has never been hospitalized for her mental condition. Furthermore, the medical records from Dr. Rubenfaer also contain numerous notations that the claimant reported only mild symptoms, improvement, or feeling better, etc; and, in 2009, she reported looking for work.

(Tr. at 16 (citations omitted).) I suggest that the ALJ's explanation is sufficient under current case law and the regulations.

In addition, as discussed above, I suggest that the mild symptoms are revealed by: (1) Dr. Rubenfaer's notes indicating that Plaintiff was "still looking for work" and that her troubles were financial and those experienced by most parents who worry about their children (Tr. at 217-18); (2) the fact that Plaintiff's treatment plan set by Dr. Rubenfaer was for her to "see her therapist regularly [and] continue medication" (Tr. at 316); and (3) the fact that Dr. Rubenfaer found that

18

Plaintiff's orientation to time, person, and place, her recent and past memory, and her judgment were all "intact." (Tr. at 317.)

I therefore suggest that the ALJ correctly found that Dr. Rubenfaer's findings of marked and extreme limitations in all categories, including simple work procedures and decisions, were thoroughly inconsistent with Plaintiff's treatment and the doctor's own notes. In addition, Dr. Rubenfaer's conclusion that Plaintiff suffered "one or two" episodes of decompensation appears to be created out of whole cloth since Dr. Rubenfaer acknowledged that Plaintiff has never even been hospitalized. (Tr. at 315-16.) I therefore suggest that the ALJ properly discounted Dr. Rubenfaer's RFC analysis.

Finally, I suggest that Dr. Rubenfaer's opinion was a conclusory check-line form which contained no citations to results of tests, observations, or other medical findings. Under these circumstances, I suggest that the ALJ was free to discount the conclusions and committed no error in doing so. *See Teague v. Astrue*, 638 F.3d 611, 616 (8th Cir. 2011) (holding that ALJ properly discounted doctor's opinions on a check-off form which "did not cite clinical test results, observations, or other objective findings as a basis for determining [the plaintiff's] capabilities"); *Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) (holding that the ALJ properly discounted the treating physician's opinion that consisted of checklist forms which cited no medical evidence and provided little or no elaboration).

To the extent that Plaintiff contends that the ALJ's failure to rely on Dr. Rubenfaer's opinion resulted in a failure to give Plaintiff's GAF scores more weight, I suggest this argument lacks merit and does not otherwise undermine the ALJ's findings regarding Dr. Rubenfaer's opinion. The Commissioner "has declined to endorse the [GAF] score for 'use in the Social Security and SSI disability programs,' and has indicated that [GAF] scores have no 'direct

correlation to the severity requirements of the mental disorders listings.'" *Kennedy v. Astrue*, 247 F. App'x 761, 766 (6th Cir. 2007) (citations omitted). Therefore, any decision not to rely on the GAF score is of little consequence and would not undermine a decision supported by substantial evidence. *See also Oliver v. Comm'r of Soc. Sec.*, No. 09-2543, 2011 WL 924688, at *4 (6th Cir. Mar. 17, 2011) (upholding ALJ's decision not to rely on GAF score of 48 because it was inconsistent with other substantial evidence in the record and noting that the "GAF score is not particularly helpful by itself"); *Turcus v. Soc. Sec. Admin.*, 110 F. App'x 630, 632 (6th Cir. 2004) (upholding ALJ's reliance on doctor's opinion that plaintiff could perform simple and routine work despite GAF score of 35).

### d.      RFC

For the same reasons stated above under the credibility analysis, I suggest that the ALJ's RFC findings are supported by substantial evidence. In addition, Plaintiff was treated for both mental and physical limitations with prescription medication alone and also underwent one steroid injection to her cervical spine. Such modest treatment is inconsistent with a finding of disability. *See Helm v. Comm'r of Soc. Sec.*, 405 F. App'x 997, 1001 (6th Cir. 2011); *Myatt v. Comm'r of Soc. Sec.*, 251 F. App'x 332, 334-35 (6th Cir. 2007).

Finally, I suggest that the hypothetical posed to the VE properly incorporated the limitations found in the record and was in harmony with the objective record medical evidence and Plaintiff's own statements that, despite the pain, Plaintiff testified that she is able to cook "[a] little bit," do laundry "maybe once or twice a week," shop for groceries with her husband, visit her parents, take care of her own personal hygiene, watch television, climb stairs "[w]ith difficulty," pick up ten pounds, stand for fifteen to twenty minutes at a time, "sit for a long time – maybe about an hour," and walk one block without having to rest. (Tr. at 45-47.) *See Griffeth v. Comm'r of Soc. Sec.*, 217

F. App'x 425, 429 (6th Cir. 2007); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

### 3.    Conclusion

For all these reasons, after review of the record, I suggest that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

## III.   <u>REVIEW</u>

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

s/ 𝕮𝖍𝖆𝖗𝖑𝖊𝖘 𝕰 𝕭𝖎𝖓𝖉𝖊𝖗

CHARLES E. BINDER
Dated: January 24, 2014                     United States Magistrate Judge


## CERTIFICATION

I hereby certify that this Report and Recommendation was electronically filed this date and served upon counsel of record via the Court's ECF System.

Date:  January 24, 2014              By____s/Patricia T. Morris_____
                                          Law Clerk to Magistrate Judge Binder